UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT AXEL,

               Plaintiff,

v.                                                      Case No.  8:15-cv-76-T-24 TGW

FIELDS MOTORCARS OF
FLORIDA, INC.,

               Defendant.
_____/

**<u>ORDER</u>**

This cause comes before the Court on the parties' cross-motions for summary judgment (Doc. No. 33, 35) and the responses thereto (Doc. No. 41, 42).  The Court held a hearing on these motions on May 20, 2016.

Plaintiff Scott Axel filed this suit against Defendant Fields Motorcars and asserts claims under the Fair Labor Standards Act and the Florida Minimum Wage Act.  He also asserts equitable claims of quantum meruit and unjust enrichment.  The main issue before the Court is whether Plaintiff was an employee of Defendant during the sixteen month period that he claims to have "worked" for Defendant.  As explained below, the Court finds that Plaintiff was not an employee of Defendant.  In reaching this conclusion, the Court has construed the facts in the light most favorable to Plaintiff.

**<u>I.  Standard of Review</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw all inferences from the evidence in the light most favorable to the

non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d

1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of

showing the Court, by reference to materials on file, that there are no genuine issues of material

fact that should be decided at trial.  See id. (citation omitted).  When a moving party has

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate

specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

In 2010, Plaintiff was arrested in Texas for driving while intoxicated.  (Doc. No. 33-1,

depo p. 15, 82-83).  In 2011, before Plaintiff began "working" for Defendant, he worked for

Enterprise Rent-A-Car and was fired for not showing up.  (Doc. No. 33-2, depo p. 64-65).  At

that time, Plaintiff had a drug problem, and he later went to rehab for eight months.  (Doc. No.

33-2, depo p. 61).  Thereafter, in December of 2012, Plaintiff applied for a car salesman position

with Defendant, and he was not given the job.  (Doc. No. 33-1, depo p. 45, 89).

Plaintiff's father, Michael Axel, worked for Defendant as a Wholesale Manager.  In

January of 2013, Plaintiff's father approached Gary Gordon (Defendant's General Manager) and

asked if he would hire Plaintiff.  (Doc. No. 33-2, depo p. 34, 60-61).  Gordon knew about

Plaintiff's background and prior problem with drugs.  (Doc. No. 33-2, depo p. 61).  Gordon

responded that he was not hiring and did not want to increase payroll, so he suggested that he

(Michael Axel) teach Plaintiff his job, since Michael Axel would presumably be retiring

someday.  (Doc. No. 33-2, depo p. 34, 60-61, 67).  Michael Axel asked Gordon if Defendant

would split his compensation between him and his son, and Gordon said no and that Michael

Axel should pay Plaintiff directly.  (Doc. No. 33-2, depo p. 35).  Michael Axel did not directly

split his compensation with Plaintiff, but he allowed Plaintiff and Plaintiff's children to continue

to live with him and provided them with financial support.  (Doc. No. 33-2, depo p. 35, 36; Doc.

No. 33-1, depo p. 55-56).

 According to Plaintiff's deposition testimony, Gordon told him that if he learned his

father's job, "we'll try to ease you in here" and that "there was a good chance [he] could take his

[father's] position when and if he retired."  (Doc. No. 33-1, depo p. 44, 53).  Plaintiff would tell

people that he was learning his father's job so that he could take over his father's position

eventually.  (Doc. No. 33-1, depo p. 57-58).

 Plaintiff shadowed his father to learn his job, and as a result, Plaintiff did the following

tasks: located and researched cars, analyzed their condition, attended auctions, transported cars

between dealerships, and signed between 60 and 150 purchase/sales agreements on behalf of

Defendant.  (Doc. No. 33-1, depo p. 49, 59-64).  Additionally, Plaintiff posted Defendant's cars

for sale on Craigslist, eBay, and TradeRev, and this work was not part of his father's job, nor

would his father necessarily benefit from this work.  (Doc. No. 33-1, depo p. 47; Doc. No. 36-2,

depo p. 114-15, 120-22, 129; Doc. No. 37-1, depo p. 33-39, 41, 45).

 Plaintiff contends that he spent a substantial amount of time posting Defendant's cars for

sale on TradeRev and that such task was Lance Lightsey's responsibility.  (Doc. No. 33-1, depo

p. 94; Doc. No. 37-1, depo p. 35).  Lance Lightsey (Defendant's Used Car Manager) admits that

it was his responsibility to post cars on TradeRev, but he states that Plaintiff volunteered to do

this work.  (Doc. No. 37-1, depo p. 9, 35-36).

 In May of 2014, Defendant fired Plaintiff's father.  As a result, Plaintiff stopped

"working" for Defendant at that time.  (Doc. No. 33-1, p. 46).  On November 24, 2014, Plaintiff

filed this lawsuit against Defendant in state court, which was removed to this Court on the basis

of federal question subject matter jurisdiction.  Plaintiff asserts the following five claims against

Defendant: (1) failure to pay minimum wages under the Fair Labor Standards Act ("FLSA"); (2)

failure to pay minimum wages under the Florida Minimum Wage Act ("FMWA"); (3) failure to

pay overtime under the FLSA; (4) quantum meruit; and (5) unjust enrichment.

### III.  Defendant's Motion for Summary Judgment

The main issue before the Court is whether Plaintiff was an employee of Defendant.  This

is a question of law, which is based on factors that are questions of fact.   If the answer is that

Plaintiff was not Defendant's employee, then Defendant is entitled to summary judgment on

Plaintiff's FLSA and FMWA claims.  There is, however, very little case law regarding the

factual scenario present in this case—where an employee of the alleged employer asks to bring

his son to work to learn the employee's job in order for the son to possibly take over that job one

day.

Generally, the cases on the issue of whether a person is an employee fall into one of three

categories: (1) whether the person is an employee or an independent contractor; (2) whether the

alleged employer is a joint employer along with the employee's acknowledged employer; and (3)

whether the person is a trainee or an employee.  The instant case does not fall neatly into any of

these three categories, but the most relevant category appears to be whether Plaintiff was a

trainee or an employee.

The court in Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199 (11th Cir. 2015),

articulated the test to be applied to determine whether a person is a trainee or an employee.  The

4

Schumann court borrowed "the Second Circuit's articulation of 'a non-exhaustive set of considerations' for evaluation in determining the 'primary beneficiary' in cases involving modern internships," which identified the following seven factors:

> 1.    The extent to which the intern and the employer clearly understand that there is no expectation of compensation.    Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.
> 2.    The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.
> 3.    The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
> 4.    The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
> 5.    The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
> 6.    The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
> 7.    The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Id. at 1211-12 (citing Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 536-37 (2d Cir. 2015)).[1]  Under this test, no one factor is dispositive; the court must weigh the factors to determine who is the primary beneficiary of the training—this reveals the economic reality of the situation.  See id. at 1209-10, 1212.  The court considers "the benefits to the [person] while still considering whether the manner in which the [alleged] employer implements the [training] program takes unfair advantage of or is otherwise abusive towards the [person]."  Id. at 1211. The mere fact that an alleged employer benefits from the alleged employee, standing alone, is

---

[1] The Schumann court actually cited to a prior version of the Glatt opinion.

not sufficient to render the person an employee under the FLSA, as long as the alleged employee also plainly benefits.  See id. at 1211.

Factors 2, 3, and 4 (comparing the on-the-job training to the person's formal academic program) are inapplicable to the instant factual situation.  With regard to factor 1—expectation of compensation—the parties agree that there was no expectation of compensation from Defendant while Plaintiff learned his father's job.  With regard to factor 5—duration—Plaintiff continued to shadow his father for almost a-year-and-a-half, and there is no evidence regarding how long it should have taken him to learn his father's job.  With regard to factor 6—whether Plaintiff's work complemented or displaced the work of paid employees—Plaintiff's work complemented his father's work, as Plaintiff shadowed his father and worked closely with him.  There is also evidence that Plaintiff posted cars for sale on TradeRev, which was work that his father did not do and was work that was Lance Lightsey's responsibility.  Plaintiff also transported some cars that were not associated with his father between dealerships for Defendant.  With regard to factor 7—whether there was an entitlement to a paid job at the end of the training—Plaintiff was told that there was a possibility of being hired by Defendant when his father retired.  However, there was no specific time frame when Michael Axel intended, or was expected, to retire.

A review of these facts does not readily indicate who was the primary beneficiary of Plaintiff's "work."  Plaintiff benefitted by being allowed to learn the wholesaling business and gain valuable experience by shadowing his father.  Given Plaintiff's past drug problems, which caused him to be fired from his last job, this training with his father gave Plaintiff an opportunity to prove himself to future employers.

Defendant, on the other hand, did not benefit from all of Plaintiff's "work."  To the extent that Plaintiff shadowed his father and helped his father with his work, Defendant gained nothing, as it would have received the same benefits if Michael Axel had performed his own work by himself.  To the extent that Plaintiff did work that was not part of Michael Axel's job (such as transporting Defendant's cars between dealerships and posting Defendant's cars for sale online), Plaintiff's work did provide a benefit to Defendant, but Defendant did not benefit more than Plaintiff was benefitting from learning the automobile trade.  This benefit to Defendant is not enough, after considering the totality of the circumstances, to make Plaintiff an employee of Defendant.  Furthermore, to the extent that Defendant benefitted from Plaintiff's work that was not part of Michael Axel's job, Plaintiff may pursue the equitable remedies of quantum meruit and unjust enrichment for relief.

Plaintiff argues that as long as he shows that he did work that was an economic benefit to Defendant (which for purposes of Defendant's motion for summary judgment, he has made such a showing), then as a matter of law, he was an employee.  In support of this contention, Plaintiff cites Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 471 (11th Cir. 1982).  In Donovan, one of the issues before the appellate court was whether the district court erred in finding that an employment relationship existed.  See id.  In concluding that an employment relationship existed, the court stated the following:

> The substance of appellants' argument is that they did not intend to create an employment relationship, but merely gave the [the alleged employees] tasks to keep them occupied. We find appellants' argument to be devoid of merit.
>
> That the appellants may not have had the intention to create an employment relationship is irrelevant; "it is sufficient that one person 'suffer or permit (another) to work.' "  Here, the district court found

> that these [alleged employees] did work which was of economic benefit to the appellants.  This finding is not clearly erroneous.  Therefore, the district court correctly concluded that these individuals were employees and were entitled to back wages for their work.

Id. at 470-71.

Plaintiff, however, oversimplifies the test for finding an employment relationship.  The test cannot simply be whether the purported employee did work which was of economic benefit to the alleged employer.  The sparse sentences in Donovan are not sufficient to create such a test.  Instead, in Kaplan v. Code Blue Billing & Coding, Inc., 504 Fed. Appx. 831 (11th Cir. 2013), the court stated the following:

> In determining whether an employer-employee relationship exists under the FLSA, we must consider the "economic realities" of the relationship, including whether a person's work confers an economic benefit on the entity for whom they are working.  But, when a person works for his own advantage or personal purpose—particularly when his work provides no "immediate advantage" for his alleged "employer"—he is not an "employee" under the FLSA.

Id. at 834 (internal citations omitted).  Thus, according to Kaplan, whether a person's work confers an economic benefit on the entity for whom they are working is simply one factor to be considered, not the dispositive factor.

In determining whether Plaintiff was an employee, it is necessary to take a step back and look at the purpose of the FLSA, which was explained as follows:

> Nearly seventy years ago, the Supreme Court wrote that the "the prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  The Court explained that Congress passed this law as "a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which

8

>    endangered national health and efficiency and as a result the free
>    movement of goods in interstate commerce." This Court has . . .
>    echoed the same principle: the goal of the FLSA is to counteract the
>    inequality of bargaining power between employees and employers.

Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 800 (11th Cir. 2015)(internal citations

omitted). Plaintiff knew in January of 2013 that Defendant was not hiring him, and instead, he

knowingly "worked" for free by shadowing his father. Therefore, it cannot be said that Plaintiff

was in any way economically dependent on Defendant. Nor was Defendant using its superior

bargaining power to coerce Plaintiff to work, because Defendant never offered Plaintiff anything

at all for his work and allowed the arrangement as an accommodation to his father.

        The FLSA defines the term "employ" to include "to suffer or permit to work." 29 U.S.C.

§ 203(g). However, the Supreme Court has stated that this definition "was obviously not

intended to stamp all persons as employees who, without any express or implied compensation

agreement, might work for their own advantage on the premises of another." Walling v.

Portland Terminal Co., 67 S. Ct. 639, 641 (1947). Instead, the Supreme Court stated that the

FLSA's "purpose as to wages was to insure that every person whose employment contemplated

compensation should not be compelled to sell his services for less than the prescribed minimum

wage." Id.

        Almost 40 years later, the Supreme Court reiterated that "[a]n individual who, 'without

promise or expectation of compensation, but solely for his personal purpose or pleasure, worked

in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of

the [FLSA]." Tony and Susan Alamo Foundation v. Secretary of Labor, 105 S. Ct. 1953, 1958

(1985)(citing Walling, 676 S. Ct. at 641). The Court stated that the test of employment under the

FLSA is one of economic reality and stated the following:

> The purposes of the [FLSA] require that it be applied even to those who would decline its protections.  If an exception to the [FLSA] were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act.  Such exceptions to coverage would affect many more people than those workers directly at issue in this case and would be likely to exert a general downward pressure on wages in competing businesses.

Id. at 1961-62 (internal citations omitted).

Applying this reasoning to the instant case, it is clear that Plaintiff was not an employee. As previously stated, in this case it is undisputed that compensation for Plaintiff by Defendant was never contemplated.  Thus, there was no way for Defendant to coerce Plaintiff to sell his services for less than minimum wage, as Plaintiff at all times knowingly chose to shadow his father for free.  Furthermore, given that there was no specific end date in sight for Plaintiff's father's employment and Defendant did not control the date of Michael Axel's retirement, this also weighs against finding that Plaintiff was economically dependent on Defendant such that he was unfairly forced to continue to work for less than minimum wage.

The Court acknowledges that this case does not fit easily into any of the three tests described above for determining employment status.  However, there are two cases that persuade this Court that its conclusion—that Plaintiff was not Defendant's employee—is correct.

First, in Beldin v. Travis County, 1:02-cv-572 (W.D. Tx. April 21, 2003)(Doc. No. 22), the plaintiff's mother was an employee of the county, and the plaintiff helped her visually impaired mother catch up on her work so that her mother would not lose her job.[2]  The plaintiff

---

[2]A copy of this case can be found attached to this Court's May 11, 2016 order.  (Doc. No. 44-1).

was never hired by or paid by the county.  The mother's supervisor knew that the plaintiff was

helping her mother with her work, and the supervisor did not stop the plaintiff from providing

the help.  However, the supervisor told her it was not necessary.  The district court concluded

that the plaintiff was not an employee of the county.  The plaintiff appealed, and the appellate

court affirmed, stating that "[t]he plaintiff provided no objective indicia of an employment

relationship."  Beldin v. Travis County, 85 Fed. Appx. 373, 373 (5th Cir 2003).

Likewise, in Emanuel v. Rolling in the Dough, Inc., 2012 WL 5878385 (N.D. Ill. Nov.

21, 2012), the court was faced with the issue of whether a family member working for free was

an employee of the alleged employer.  In Emanuel, the plaintiff's boyfriend and domestic partner

was the manager of a Domino's Pizza store, and the plaintiff wanted to work there in an effort to

help him become a franchise owner.  See id. at *1.  When the boyfriend asked the owner,

Lindeman, if the plaintiff could work at the store, Lindeman said no, but the boyfriend allowed

the plaintiff to work there anyway.  See id.  When the plaintiff alleged that she was an employee

of the owner, the court rejected her argument, stating:

> [The plaintiff] argues that defendant Lindeman's repeated statement
> that he would not pay her to work at the Elmhurst store was not a
> refusal to hire her as an employee, but an offer for her to work for
> free.  Since [the plaintiff] claims to have worked at the Elmhurst store
> without compensation and without Lindeman forcibly ejecting her
> from the store or otherwise preventing her from working, it is her
> position that an employment relationship impliedly exists.
>
> While application of the FLSA is intended to be broad, it is not
> unlimited.  The definition of "employ" is not so broad as to include
> those individuals "who, without any express or implied compensation
> agreement, might work for their own advantage on the premises of
> another."  It is undisputed that Lindeman informed [the boyfriend]
> that [the plaintiff's] talents would be better used elsewhere and that
> the Domino's nepotism policy prevented Lindeman from hiring [the
> plaintiff] to work at the Elmhurst store. It is further undisputed that

> [the plaintiff] never completed any new hire documents, such as IRS
> forms and direct deposit information, and that Lindeman never
> expressly told [the plaintiff] that he would hire her to co-manage the
> Elmhurst store. Indeed, Lindeman had already hired someone, [the
> plaintiff's boyfriend], to manage the Elmhurst store and none of the
> other franchises had more than one manager. It defies common sense
> that Lindeman would pay two people to do the same job at the same
> time.  As a matter of economic reality, if [the plaintiff] and [her
> boyfriend] were doing the same job and sharing duties it stands to
> reason that they would also share the salary of a general manager. In
> essence, that is what [the boyfriend] and [the plaintiff] did since the
> testimony in the record indicates that [the boyfriend] paid the couple's
> living expenses. Moreover, [the plaintiff] testified that one of the
> reasons she was working at the Elmhurst store was to support [her
> boyfriend] and help him realize his dream of owning a franchise. The
> situation at hand bears none of the indicia of a traditional bargained-
> for exchange of labor for consideration.
>
> Here, the record shows unquestionably that the parties had no express
> compensation agreement. Nor could there be any implied agreement
> between Lindeman and [the plaintiff] in the face of his unequivocal
> refusal to hire her as an employee.  Rather, it appears that [the
> plaintiff] and [her boyfriend] unilaterally decided that [the plaintiff]
> would work at the Elmhurst store, which does not amount to an
> employment relationship between defendants and [the plaintiff] for
> purposes of the FLSA. "The words 'suffer or permit to work' must be
> understood with common sense."

Id. at *4 (internal citations omitted).

The analysis in Belden and Emanuel support this Court's conclusion that Plaintiff was

not Defendant's employee.[3]  Plaintiff was clearly put on notice that while he was shadowing his

---

[3]To the extent that Plaintiff would argue that two other cases—Griffiths v. Parker, 2014
WL 2095205 (S.D. Fla. May 19, 2014), and Okoro v. Pyramid 4 Aegis, 2012 WL 1410025, at
*1, 4 (E.D. Wis. April 23, 2012)—support his contention that Defendant's motion for summary
judgment should be denied, the Court rejects this argument.  In both of those cases, the courts
found that there was evidence that the plaintiffs had a reasonable expectation of compensation
for their work.  See Griffiths, 2014 WL 2095205, at *6; Okoro, 2012 WL 1410025, at *10.  In
the instant case, it is undisputed that Plaintiff had no expectation of compensation from
Defendant for the time that he spent shadowing his father.

father, he would not be hired by or paid by Defendant.  To the extent that Plaintiff helped his

father perform work for Defendant, Plaintiff indirectly shared his father's compensation, as

Michael Axel provided Plaintiff with a place for him and his children to live and also provided

financial support.  While Plaintiff may have hoped to be hired by Defendant when his father

decided to retire, at all relevant times, Plaintiff's father continued to be employed by Defendant.

Thus, the facts show that there was no employment relationship between Plaintiff and Defendant

during the relevant period.

Accordingly, the Court grants Defendant's motion for summary judgment on the issue

that Plaintiff was not Defendant's employee.  Because an employment relationship did not exist

between Plaintiff and Defendant, Plaintiff's FLSA and FMWA claims fail.

In the alternative to his FLSA and FMWA claims, Plaintiff asserts the equitable claims of

quantum meruit and unjust enrichment.  These claims arise under state law, and the Court

declines to exercise supplemental jurisdiction over these claims, pursuant to 28 U.S.C. §

1367(c)(3).  As such, the Court remands these claims back to state court.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Defendant's Motion for Summary Judgment (Doc. No. 33) is **GRANTED** on the

        issue of employee status—the Court finds that Plaintiff was not Defendant's

        employee.  As such, the Court grants Defendant summary judgment on Plaintiff's

        FLSA and FMWA claims in Counts I, II, and III.

(2)     The Court declines to exercise supplemental jurisdiction over the remaining state

        law claims of quantum meruit and unjust enrichment in Count IV and V.  The

Court remands these claims back to state court.

(3)      The Clerk is directed to enter judgment in favor of Defendant on Counts I, II, and

III, to terminate Plaintiff's Motion for Summary Judgment (Doc. No. 35), to

remand Counts IV and V back to state court, and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 24th day of May, 2016.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

14